IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| MEGAN TOWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 06-1233-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

James Dodge
Juliana E. Coons
The Dodge Law Firm
825 N. E. 20th Avenue, Suite 220
Portland, Oregon  97232

      Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Britannia I. Hobbs
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

Daphne Banay
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Megan Town brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

Page 2 - OPINION AND ORDER

physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

    If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

    The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

    The ALJ concluded that Town had the severe impairment of degenerative disc disease of the lumbar spine.  However, the ALJ also found that this impairment was not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.  Based on his review of the record, the ALJ found that Town had the residual functional capacity to lift 20 pounds occasionally and 10 pounds

frequently; stand or walk for 30 minutes at one time for no more than a total of two hours in an

eight-hour workday; and sit one hour at a time with no overall limit.  The ALJ added some

postural limitations and limited Town to simple, routine, repetitive work.  Based on vocational

expert testimony, the ALJ found that Town could work as an information clerk, parking lot

attendant, ticket seller, and general clerk, and thus was not disabled as defined by the Act.

### FACTS

Town alleges that she has been disabled since July 31, 2003 due to low back pain from

degenerative disc disease of the lumbar spine.  Town, who was 33 years of age at the time of the

ALJ's opinion, has a high school education and work experience as a retail sales cashier,

administrative assistant, and a caterer/deli worker.  Town lives with her partner, her two children,

aged nine and ten at the time of the hearing, a new baby born in July 2005, and her grandmother

who assists with the childcare.

Town attributes her back pain to nine years of coin-counting duties for a private pay

phone company.  She testified at the hearing that lifting heavy things, bending, and reaching

cause intense low back pain, as does extended walking, sitting, or standing for over 30 minutes.

Town claims to lie down for most of the day because of the pain.  She reads three to four hours a

day and plays computer card games for two to three hours a day.  Town shops twice a week and

does some of the house work but her grandmother and children assist her.  She can no longer

hike, bicycle, or attend movies, sports events, or dance clubs due to her back pain when engaging

in activities for any length of time.  Town uses ibuprofen for pain and also has a medical

marijuana card from the State of Oregon.  Town can walk one half mile or engage in hobbies for

one half to one hour before resting.

Page 5 - OPINION AND ORDER

**DISCUSSION**

I.    Town's Credibility

Town argues that the ALJ improperly determined that she was not entirely credible.

Town argues that there is clear evidence of long-standing severe problems with chronic and

intractable pain which supports her subjective symptom testimony.  She notes that her partner,

with whom she has lived for several years, corroborates her testimony.  Town contends that the

ALJ should have sent her to a physiatrist or pain doctor for further evaluation of any underlying

pain disorder.  She claims that her activities are consistent with her testimony and her inability to

perform substantial gainful activity in a competitive work environment.

The Commissioner contends that evidence of conservative treatment is a sufficient reason

to discount a plaintiff's testimony regarding the severity of an impairment.  He also notes the

lack of treatment even after Town had regained health insurance, the reluctance to follow through

with treatment recommendations, and the lack of prescription pain medication.  Finally the

Commissioner noted that after her alleged onset date, Town worked 30 hours a week for five

months without accommodation.  Turning to Town's daily activities, the Commissioner contends

that the relevance is not to indicate Town's ability to work on a sustained basis.  Instead, the

Commissioner argues that the level of activity is incompatible with the degree of incapacity that

Town claims.

When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce

objective medical evidence of one or more impairments; and (2) show that the impairment or

combination of impairments could reasonably be expected to produce some degree of symptom.

Page 6 - OPINION AND ORDER

Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The claimant is not required to

produce objective medical evidence of the symptom itself, the severity of the symptom, or the

causal relationship between the medically determinable impairment and the symptom.  The

claimant is also not required to show that the impairment could reasonably be expected to cause

the severity of the symptom, but only to show that it could reasonably have caused some degree

of the symptom.  Id. at 1282.  In the second stage of the analysis, the ALJ must assess the

credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no

affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ

makes specific findings stating clear and convincing reasons for the rejection, including which

testimony is not credible and what facts in the record lead to that conclusion.  Id. at 1284.

        Although the ALJ cannot reject subjective pain testimony solely because it was not fully

corroborated by objective medical evidence, medical evidence is still a relevant factor in

determining the severity of the pain and its disabling effects.  Rollins v. Massanari, 261 F.3d 853,

857 (9th Cir. 2001).

        The ALJ concluded that Town's statements concerning the intensity, duration and

limiting effects of the symptoms were not entirely credible.  The ALJ noted that the medical

reports did not support the severity of symptoms to which Town testified.  In particular, the ALJ

noted that Dr. Brett, the examining neurosurgeon, did not find that surgery was indicated, refused

to prescribe narcotic pain medication, recommended conservative treatment of back

strengthening exercises and chiropractic care, and suggested she not return to any job which

involves repetitive or heavy exertion of the low back.  The ALJ's analysis is supported by the

record and allowed under <u>Rollins</u>.  I also observe that Dr. Brett concluded that Town could work in a light-duty job.

The ALJ noted that Town received little treatment for her low back pain, even after her health insurance was reinstated.  The fact that a claimant's symptoms are not severe enough to motivate him or her to seek other forms of treatment, even if some treatment is underway, "is powerful evidence regarding the extent" of the symptom.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ noted that on November 21, 2005, Town complained to Dr. Gragnola of occasional headaches and right shoulder pain but sought no treatment for either condition. The ALJ also noted that three days earlier, at the hearing, Town testified that she had headaches twice a week.  Although I do not consider the discrepancy between "occasional" and "twice a week" to be significant, the lack of treatment does bear on Town's credibility.

The ALJ also observed that Town was reluctant to follow through with treatment recommendations, noting her lack of compliance and discharge from physical therapy.  This reason is supported by the record.  Further, the ALJ noted that Town reported on a Social Security form her use of medical marijuana in September 2005 but only reported her use of over-the-counter pain medication at the hearing two months later when asked what she took for the pain.  I do not give much weight to the lack of disclosure about marijuana at the hearing because Town was not directly asked about it.  The lack of the need for narcotic pain medication, however, is significant concerning the severity of the pain.  <u>Parra v. Astrue</u>, 481 F.3d 742, 750-51 (9th Cir. 2007) (evidence of conservative treatment, consisting of the use of over-the-counter pain medications, is sufficient to discount a claimant's testimony on the severity of an impairment), <u>cert. denied</u>, 128 U.S. 1068 (2008).

In addition, the ALJ noted that Town's ability to work 30 hours a week from March through July 2003, after her alleged onset date, was inconsistent with her reports of the severity of her impairment because she received no special accommodations in the job. He was also concerned that Town testified at the hearing that she worked only 20 hours per week but the form she filled out earlier showed 30 hours a week. Finally, the ALJ concluded that Town's daily activities–including concentrating on reading for three to four hours a day and computer card games for two to three hours a day, performing some of the household tasks, driving, and shopping by getting assistance with lifting heavy items–were all inconsistent with her testimony about the severity of the impairment, particularly her claimed need to lie down most of the day. These reasons are supported by the record and are relevant factors to the analysis.

I conclude that the ALJ has made specific findings stating clear and convincing reasons for rejecting Town's credibility and thus has committed no error in doing so.

II.    Rejection of Physician's Opinion

Town contends that the ALJ improperly rejected the opinion of Dr. Puziss, an examining orthopedist. She notes that Dr. Puziss took x-rays as part of his examination. According to Town, Dr. Puziss confused the date of her alleged onset date with the date she filed a workers' compensation claim. Town believes this confusion is not relevant.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285. If a treating or examining physician's opinion is not contradicted

by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. <u>Lester</u>, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. <u>Id.</u> at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. <u>Morgan v. Commissioner of Social Security Administration</u>, 169 F.3d 595, 600 (9th Cir. 1999).

Dr. Puziss, an orthopedic surgeon, examined Town on March 22, 2006 by performing a physical exam and taking X-rays. He concluded:

> I think it is very clear that this patient has been temporarily but totally disabled ever since the October 2002 injury. Her ability to work is virtually 0. Her physical capacities are such that she cannot stand for more than 15 minutes, cannot sit for realistically more than one hour, bend, stoop, or lift in any capacity. She has to lie down during the day. I do not believe there is any job in the workplace that is available for someone in this condition and so she remains totally disabled from any kind of work.

Tr. 201.

Dr. Puziss' opinion of complete disability is contradicted by the opinion of the examining neurosurgeon, Dr. Brett, who believed that Town could return to a light duty job which did not involve repetitive or heavy exertion of the low back. Thus, to reject Dr. Puziss' opinion, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record.

The ALJ gave little weight to Dr. Puziss' opinion for several reasons. The ALJ could not tell from the documents whether Dr. Puziss had access to Town's medical records or if he relied solely on information provided by Town about her medical history. The ALJ also noted that

there is no record of any particular acute injury in October 2002. The ALJ relied on Town's

30-hour per week job in mid-2003, and Town's statement that she left her full-time job in

November 2002 for personal reasons, as both being inconsistent with Dr. Puziss' opinion of

complete disability since October 2002. This analysis is supported by the record. Moreover, I

cannot speculate on whether Dr. Puziss confused the dates of Town's disability onset with the

filing date of her workers' compensation claim. I must address his opinion as he wrote it.

      The ALJ also found Dr. Puziss' opinion to be inconsistent with his own objective

findings on physical exam, which the ALJ characterized as mild and moderate. The ALJ thus

believed that Dr. Puziss primarily based his opinion on Town's subjective reports of her

limitations. This analysis is supported by the record of Dr. Puziss's examination, as well as the

law. Credibility determinations bear on the evaluation of medical evidence when there are

conflicting medical opinions or inconsistency between a claimant's subjective complaints and his

diagnosed conditions. Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005). As I decided above,

the ALJ properly discounted Town's credibility. I do note that Dr. Puziss' X-ray showed

moderately severe narrowing at L5-S1 but his examination of Town's physical ability and

movement did not reveal more than moderate abnormalities.

      Finally, the ALJ noted that Town reported more severe symptoms to Dr. Puziss in March

2006 than she testified to at the hearing only four months earlier in November 2005. Town

reported to Dr. Puziss that she could sit for an hour or two and stand for 15 minutes. At the

hearing, Town stated that she could sit for about an hour and stand for about 20 or 30 minutes.

There is a discrepancy, but it is small and deserves little weight.

Although this last factor would not be sufficient on its own to reject a physician's opinion, the ALJ gave other reasons which are specific, legitimate, and supported by substantial evidence in the record.  Thus, the ALJ did not err in rejecting Dr. Puziss' opinion.

III.    Meeting or Equaling a Listed Impairment

Town argues that she meets or equals two of the listed impairments for disorders of the spine and depression.

The listings set out at 20 C.F.R. pt. 404, Subpart. P, App. 1 are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990).  For a claimant to show that her impairment matches one of those listed, the impairment must meet all of the specified medical criteria.  Id. at 530.  Alternatively, a claimant may show that her unlisted impairment is "equivalent" to a listed impairment, but to do so she must present medical findings equal in severity to all the criteria for the one most similar listed impairment.  Id. at 531.  Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment, as evidenced by the medical records, "with the medical criteria shown with the listed impairment." 20 C.F.R. § 404.1526.  "Medical equivalence must be based on medical findings."  "A generalized assertion of functional problems is not enough to establish disability at step three." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999).  If a claimant's impairment matches or is equivalent to a listed impairment, she is presumed unable to work and is awarded benefits without a determination whether she can actually perform prior work or other work. Sullivan, 493 U.S. at 532.

Page 12 - OPINION AND ORDER

Town bears the burden of proving that she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. Burch, 400 F.3d at 683.

The Commissioner argues that Town provides no medical authority for her conclusion that she has a chronic pain disorder and reactive depression. According to the Commissioner, a plaintiff's generalized arguments are not enough to establish disability at step three.

A.     Listing 1.04 – Disorders of the Spine

Town notes the X-ray evidence of stenosis and retrospondylolisthesis, her chronic pain that worsens through the day, and her difficulty walking significant distances. Town claims that she either meets the A and B criteria, or meets the C criteria, or equals Listing 1.04.

Town's argument is based primarily on her reported severe pain. She has not cited specific medical findings in the record to support either a meet or equivalence argument. Under Tackett, a general assertion of functional problems, here low back pain and difficulty walking distances, is insufficient to establish disability under step three. I am unpersuaded by Town's argument concerning Listing 1.04.

B.     Listing 12.04 – Depression

Although no doctor has diagnosed a chronic pain disorder or syndrome, Town contends that it is evident from the record that she suffers from such a condition. She claims that her undiagnosed pain disorder should have been found to meet or equal the requirements for a psychiatric disorder, most comparable with depression. Town relies on her fears concerning being able to care for herself and children; being argumentative and hyper at Dr. Henry's office; crying frequently at Dr. Gragnola's office; her dropping of social activities due to chronic pain;

Page 13 - OPINION AND ORDER

her loss of interest in almost all activities; and her decreased energy evidenced by sleeping frequently during the day.

Again, there is no medical finding diagnosing a chronic pain disorder.  A medically determinable impairment must be established through signs, symptoms, and medically acceptable clinical or laboratory findings but under no circumstances can be established through symptoms, namely the individual's own perception of the impact of the impairment, alone.  Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005).  That is especially true where, as here, the ALJ correctly discounted Town's credibility.  Town has not met the burden to establish that she meets or equals Listing 12.04.

      C.    <u>Multiple Impairments</u>

Alternatively, Town argues that when her impairments of chronic pain and degenerative disc disease in the lumbar spine are considered in combination, they meet or equal a listing.

This argument fails for the same reason.  There are no medical findings documenting symptoms of the underlying impairments at the level required to meet or equal a listing at step three, even when considered in combination.

IV.    <u>Development of the Record</u>

Town contends that the ALJ erred by not developing the record as to whether she has a chronic pain disorder and possible reactive depression.

The Commissioner argues that the ALJ's duty to develop the record further did not arise because there was no ambiguous evidence and the record was adequate to allow for proper evaluation of the evidence.  Concerning Dr. Gragnola, the Commissioner notes that even though

Page 14 - OPINION AND ORDER

the doctor indicated he wanted to refer Town to a physiatrist, Dr. Gragnola did not state that he suspected a chronic pain disorder or possible reactive depression.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted).  The duty is heightened if a claimant is unrepresented or is mentally ill and cannot protect his own interests.

The ALJ must supplement the record if:  (1) there is ambiguous evidence; (2) the ALJ finds that the record is inadequate; or (3) the ALJ relies on an expert's conclusion that the evidence is ambiguous.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  The supplementation can include subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow the record to be supplemented.  Tonapetyan, 242 F.3d at 1150.

Town points to no ambiguous evidence.  A week after Dr. Gragnola examined Town, her attorney asked him to complete a physical capacities form.  Dr. Gragnola wrote on the letter directing his staff to let the attorney know that he wanted to refer Town to a physiatrist for further evaluation.  This is not enough for me to conclude that the ALJ erred by not developing the record further concerning a chronic pain disorder and possible reactive depression.  As the Commissioner argues, neither Dr. Granola's chart notes nor his refusal to complete the physical capacities form gives any indication that he believed either disorder was a possibility.  There is nothing in the record pointing to any loose ends which needed further investigation.  The ALJ did not err by concluding that the record was adequate on which to base a decision.

Page 15 - OPINION AND ORDER

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____15th_____ day of April, 2008.

_  /s/ Garr M. King_____
Garr M. King
United States District Judge